People v Bennett (2026 NY Slip Op 50284(U))

[*1]

People v Bennett

2026 NY Slip Op 50284(U)

Decided on March 10, 2026

Supreme Court, Bronx County

Bowen, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 10, 2026
Supreme Court, Bronx County

The People of the State of New York

againstMilton Bennett, Defendant.

Ind. No. 073827-25

Dana Snay, Assistant District Attorney, Bronx County, for the People
Benjamin R. Williams, The Legal Aid Society, for Defendant

E. Deronn Bowen, J.

Summary
The defense application to deem invalid the People's certificate of compliance (CoC) dated October 20, 2025, is DENIED, and the CoC is DEEMED VALID.
In People v Lambert (___ Misc 3d ___, 2026 NY Slip Op 50259[U] [Sup Ct, Bronx County 2026]), the court held that, "irrespective of intent, . . . the misuse, abuse, or weaponization of CPL article 245, as well as the failure to adhere to its legislative intent or to act in good faith, constitutes a violation of the duty of reasonableness that governs every aspect of discovery practice" (id. at *3-*4). Consequently, the court explained, "[p]rosecutorial due diligence and good faith cannot be examined in a vacuum, but rather against the reasonableness of the demands delineated in the motion that triggers the discovery compliance examination" (id. at *5; see People v Bay, 41 NY3d 200, 211-212 [2023] ["Reasonableness [ ] is the touchstone—a concept confirmed by the statutory directive to make 'reasonable inquiries' "], quoting CPL 245.50 [1]). The court's evaluation of the People's discovery compliance is made pursuant to the nonexhaustive factors of CPL 245.50 (5) (a) and the "duty of reasonableness [which] operates as both a legal and an ethical duty that informs every aspect of discovery practice" (Lambert, 2026 NY Slip Op 50259[U], *5).
The allegations underlying this matter are summarized as follows. On a summer evening [*2]in 2025, defendant, Milton Bennett, and other mutual acquaintances were at the home of the complainant, whom defendant had met approximately two weeks earlier. The visitors, including defendant, eventually left, and the complainant remained at home alone. Later that same evening, the complainant awoke to defendant inside her bedroom despite not owning a key or having her permission to reenter the apartment. When the complainant refused his physical advances, defendant allegedly choked her and attempted to initiate intercourse despite her continued objections. While full penetration was not achieved, genital contact occurred during the attempt.
Based upon these allegations defendant was indicted on charges of rape in the first degree (Penal Law § 130.35 [1] [a]), burglary in the second degree (Penal Law § 140.25 [2]) and other related charges. On October 20, 2025, the People served and filed a CoC, and exactly 35 days later, on November 24, 2025, defendant served and filed a timely CoC-invalidation motion now before the court (see CPL 245.50 [4] [c]). "Defendant effectively contends that the list presented in the motion constitutes a body of discoverable material over which (at the time of the motion's filing . . .) the prosecution had failed to exercise due diligence or good faith, such that the . . . certification of discovery compliance must be invalidated" (Lambert, 2026 NY Slip Op 50259[U], *8). The list here:
" • Grand Jury minutes• Arrest Report Worksheet• Command Log• Pedigree Cards• Pre-Arraignment Notification Report• NYPD Online Prisoner Arraignment Database (ZOLPA)• Roll Call Log• Prisoner Holding Pen Roster• Warrant Flyer• Activity Logs for [a named NYPD detective]• Gilgio [sic] items for [two named NYPD detectives], including IAB Log attachments, updated CCRB histories, and CPI's[ ] [Central Personnel Index]• DDS Companion Case Sheet• Surveillance video for this case, which was used in the bail application to ask for bail at arraignment• The full F File and LIMS Audit Trail for DNA testing• Unredacted Entity Report for [the complainant], Global Name Search for [the complainant], and Repository Inquiry."In responsive papers dated February 20, 2026, the People deny the assertion of discovery noncompliance. The People aver that some listed items had been turned over prior to the filing of the CoC. For example, the People directed defendant's "attention to specifically which file in the shared materials [defendant] could locate" the disputed surveillance video footage, which was "labeled 'surveillance' in the OneDrive folder shared on October 1." Other listed items could not be located despite inquiry, including the pre-arraignment notification report, roll call log and prisoner holding pen roster (see CPL 245.50 [1]). The People assert, credibly, that defendant cannot reasonably support a claim of prejudice by the absence of the missing items (see CPL 245.50 [5] [a]; People v Vaillant; 80 Misc 3d 856, 870-871 [Crim Ct, Bronx County 2023] ["the [*3]issues complained of are insufficient, against a reasonableness standard, to deem the People not duly diligent, on the whole, in complying with their discovery obligations"]). Defendant has not requested an opportunity for reply briefing to point out any perceived material issues with the People's counterclaims.
Additionally, some demands in the instant motion are, as presented, unreasonably overly expansive, including the "full F File and LIMS Audit Trail for DNA testing" and the complete Central Personnel Index (CPI) for the NYPD detectives involved in this matter (see People v Johnson, 218 AD3d 1347, 1350 [4th Dept 2023]). These requests are not tailored to an identifiable factual dispute, testing irregularity or theory of impeachment, but instead seek expansive categories of institutional records and system-level metadata unconnected to a reasonable issue in this case (see Lambert, 2026 NY Slip Op 50259[U], *12 ["Defendant's overbroad interpretation of prosecutorial discovery compliance is simply inconsistent with the more narrowly defined legislative intent underlying CPL article 245"]; cf. People v Clifford, ___ Misc 3d ___, 2025 NY Slip Op 25247, *8 [Crim Ct, NY County 2025] ["If this Court were to hold that audit trail logs are automatically discoverable, then defendant's hypothesis would equally apply to metadata stemming from every software and hardware company that a law enforcement agency utilizes on a day-to-day basis with respect to a defendant. This cannot be what the Legislature intended and would make the prosecution of cases functionally untenable and unworkable"]).
"The requirement that prosecutors 'mak[e] reasonable inquiries and efforts' means not only that prosecution inquiries and efforts over discovery must be reasonably made, but also that prosecution inquiries and efforts may be demanded only respecting reasonable discovery purposes and objectives. Consequently, a defense discovery demand must be reasonable in purpose and scope, and must conform to the intent of the legislature" (id., at *4-*5, quoting CPL 245.50 [1]).CPL article 245 does not transform repositories of institutional knowledge into wholesale discovery obligations due to the presence or possible presence of some discoverable material. The discovery statute requires reasonable disclosure efforts, not limitless production of entire databases of information not reasonably germane to the case. A significant "accommodation" should have been made here "prior to seeking a ruling from the court" (CPL 245.35 [1]; see Lambert, 2026 NY Slip Op 50259[U], *4 ["The more speculative the practical value of disputed material, particularly when balanced against the time and effort needed to cause such material or information to be made available for discovery, then the more proportionate the defense accommodation should be"] [internal quotation marks omitted]).
Here, as in Lambert, the court
"makes no determination as to whether . . . defendant's [facially overbroad list of demands] was advanced, without accommodation, with the specific intent, in part or whole, to annoy or frustrate the prosecution. What is pertinent and evident is that defendant either knew or should have known that the [overbroad list] was unreasonable, as was its inclusion in the instant CoC-invalidation motion. By the [overbroad] demand, if defendant intended primarily to annoy and frustrate the prosecutor, then it was not a good-faith use, but rather a bad-faith abuse, of the discovery statute. If the demand was made in good faith, then defendant was not reasonably diligent in self-monitoring this misuse of the discovery statute. In either case, . . . the defense unreasonably weaponized the discovery statute beyond it's legislatively intended purpose.. . . .The court rejects the defense invitation to provide an item-by-item assessment of the reasonableness of each of the approximately dozen points listed in the motion. No reading of the discovery statute requires prosecutors or the courts to separate the grains of discovery wheat from demand chaff on behalf of the defense since, again, CPL article 245 was never legislatively intended to serve as a means for litigation by annoyance and frustration" (Lambert, 2026 NY Slip Op 50259[U], *11-*12).To whatever extent "that discoverable material fell through the cracks[ ] . . . our review of the record leads us to conclude that these delayed disclosures are merely the result of a prosecutor who, having exercised due diligence, missed a few discoverable items" (People v Contompasis, 236 AD3d 138, 150 [3d Dept 2025]; see People v Deas, 226 AD3d 823, 826 [2d Dept 2024]; People v Perez, 73 Misc 3d 171, 176 [Sup Ct, Queens County 2021]). A holistic review of the prosecutor's discovery conduct reveals no objectively reasonable basis to conclude that the prosecutor acted with less than holistic due diligence and good faith. Defendant fails to point to a material violation of the legislatively intended due-diligence framework or to make a persuasive showing that "the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial" (CPL 245.50 [5] [a]). Accordingly, the court DENIES the defense CoC-invalidation application. The People's certification of discovery compliance is DEEMED VALID.
The People are reminded of their ongoing discovery, Brady and Giglio obligations (see CPL art 245; Giglio v United States, 405 US 150 [1972]; Brady v Maryland, 373 US 83 [1963]). The defense, too, is reminded of its discovery obligations (see CPL 245.10 [2]; 245.20 [4]; 245.50 [2]). Respecting future discovery practice in this matter, if any, the parties are on notice that if either "refuses to engage in CPL 245.35 (1) conferencing with the good-faith intention of reaching a reasonable accommodation over discovery disputes, despite the plain statutory expectation, then the court will have no choice but to be reasonable on that party's behalf" (People v McCray, 83 Misc 3d 1220[A], 2024 NY Slip Op 50760[U], *2 n 4). The court is confident, however, that both the prosecution and the defense are "fully capable of self-monitoring during discovery practice so as to not run afoul of the statutory duty of reasonableness" (Lambert, 2026 NY Slip Op 50259[U], *12).
THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.
Dated: March 10, 2026
Bronx, New York
E. Deronn Bowen, A.J.S.C.